May it please the court, counsel, Jessica Stengel on behalf of Scott Bishop. Mr. Bishop went to trial and he was denied a fair trial. That denial of a fair trial took place in four discrete ways and we can separate them into two basic ways. One is evidentiary, which includes the inadmissible hearsay, the inappropriate expert testimony, and the jury instruction. And the other one was his right to testify. A defendant always has the right to testify. There are limits in terms of how that testimony can come across, but the defendant always has the right to tell his story in his own words. And Mr. Bishop was denied that basic right. Would you concede that at least part of what he was wanting to say was rather technical? Sure. And that doesn't matter. When it comes to firsthand knowledge, when it comes to information that relates to the defendant's state of mind. Well, he would know what I'm talking about is his description of how this mechanism works, how he intended it to work, how machine guns work, how regular guns work, and this piece of equipment can alter one into the other potentially. That kind of description sounds rather technical to me. And it is technical. Guns are technical. There's a lot of engineering. And that doesn't matter, quite frankly. The nature of the testimony is not relevant to the consideration of whether the defendant has firsthand knowledge to testify as to something that goes to his intent. Well, he did testify as regards his intent, did he not? He did not, Your Honor. Nowhere in this? After the district court decided that Mr. Bishop could not testify for any number of reasons, including the fact that Mr. Bishop had standby counsel, Mr. Bishop was allowed to present to the jury the bald statements, I didn't intend for this to be a machine gun. That's not my intent. And that's not testifying. Those are simply bald assertions without anything to support it and anything to fill in the question that every juror has. He went on at great length. He said, it was intended as an educational experience. I designed these kits to fire one round for each. And now I'm getting into the technical part, as did he, but he was allowed to say this. Anyway, he talks about his intent. I told people not to complete the intent. Use the kit in a way that I did not intend, a choice that each of them had a right to make, not my choice. And here's a full description of what he intended by the sale of this device. Critical to this conviction is that the device be designed and intended solely and exclusively to convert a weapon into a machine gun. And so part of that is his design, which is a subjective intent issue. And that is for the jury to decide. And simply saying, I didn't intend it, doesn't answer the question that every juror must have. OK, tell me why. Explain this to me, especially in light of the fact that the government chose to use an expert witness to testify to these issues. And so Mr. Bishop could have presented his own expert witness. I mean, that's what we're talking about. He had an opportunity to explain his intent generally. He described what his intent related to generally. And if the jury wanted more, he could have had an expert witness tell him more. Respectfully, Your Honor, I disagree. When the defendant has firsthand knowledge of the subject matter and it goes to his subjective intent, regardless of how technical or how generic the information is, he is the only witness competent to testify. Well, why do all the other evidentiary rules go out the window just because he has personal knowledge of something? If you have personal knowledge of information that is otherwise prejudicial under Rule 403, for example, why wouldn't the court say, OK, fine, you have personal knowledge of it, but it's going to, you know, it has the potential to do all those evils that 403 talks about, so we're not going to let you say it. I mean, why can't you do that? Well, and I'm not suggesting that that actually occurs. Well, no, I'm not saying it occurred, but what I'm saying is the analog to that is Rule 702. And the analog is, yes, you have personal knowledge of this information, but this information falls within the scope of 702. And because it does fall within the scope of 702, you need to get an expert on the stand to say it. And again, Your Honor, I think we're going to agree to disagree when the defendant has firsthand knowledge. And quite frankly, if it wasn't coming from the defendant, I would agree it would need to be from an expert. But because this is the defendant, we're going inside the defendant's head trying to understand what's motivating the defendant, how the defendant came to these decisions. And ultimately, the jury gets to decide whether they find the defendant's testimony on this particular matter credible or not. Well, if the defendant, even if the defendant himself was going to testify as to technical matters that he understood because he was the inventor, doesn't he still have to give the government notice that he's going to be testifying as an expert? He's giving expert testimony. Not at all, Your Honor, because he is not giving expert testimony. It is expert-like in this particular instance because it does address a somewhat technical matter. However, he is the defendant, and it goes specifically to his state of mind. And the fact that the government wasn't prepared is not Mr. Bishop's problem. The government should always anticipate the defendant will be prepared, especially when the case turns on his or her intent. Well, the government certainly should be prepared that he's going to say that's not what I intended. But when he hasn't been designated as an expert, I don't know that the government should be prepared that he's going to give a lecture to the jury on how guns work. And I would disagree, Your Honor. I think regardless of the subject matter, and I apologize for being repetitive, but it comes down to when the defendant's state of mind is in play, regardless of how the context of that, the government needs to be prepared. Do you have any case law that supports you? Because the case law that I'm finding doesn't support you. Knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701. I mean, we've got a whole lot of case law that says that there is no inventor exception to the rules of evidence. What I would say is the cases that have been cited by both Mr. Bishop and the government in this appeal say that the inventor is allowed to testify as to the fact of his or her invention. They cabin that inventor's testimony quite narrowly. They do not allow an inventor to, say, compare prior art to his or her invention. They do not allow an inventor to compare the alleged infringing patent. But what they do allow is the inventor to testify to the fact of his or her invention. And Mr. Bishop is the exact same as those inventors. Now, if he were, if he wanted to, say, compare his trigger mechanism with all of the others out there on the market that are presumably legal. Well, he did that. I mean, he proffered. He wanted to compare it to a bump stock and explain the difference between his automatic reset trigger, whatever he called it, and a bump stock. And that may have been an appropriate limit. But what was not an appropriate restriction on his testimony was denying him the opportunity to explain how he viewed a trigger mechanism and what he designed his device to do with regard to that trigger mechanism. He is the only person who can say, here's what I saw. Here's why I did what I did. Here's what I intended it to be. And whether the jury believed him or not is another story. And his intent actually comes into play even more critically when looking at the jury instruction issue. There is no real argument that it's a plain error standard of review and that an error that was plain took place. The real dispute is on prongs three and four of plain error in terms of how the error affected both the defendant's rights and impugned the judicial system. I'm going to have to stop you on one and two because I think there is a dispute on whether there was an error and whether that error was plain in terms of the jury instruction. I mean, the jury instruction says, number three, the defendant knew he was manufacturing machine guns, right? Right. OK. So I think I wouldn't skip over one and two if I were you. OK. Then under the plain error standard of review, in order to go forward, there must be an error that was plain. The error that occurred in this case was that the jury was not instructed that they needed to find the defendant knew the specific physical characteristics that made his device a machine gun. In Staples versus United States, albeit under a different subsection of 5861, the Supreme Court held that in order to sustain a conviction, the jury had to find, had to be instructed that the defendant knew the specific physical characteristics of his firearm that brought it within the scope of the National Firearms Act. Given how this, and in Staples, one of the things that's different from ours is there, the district court actually instructed the jury that the government need not prove the defendant knows he's dealing with a weapon possessing every last characteristic which subjects it to the regulations. We don't have that here, do we? Correct. And that was a bit problematic in Staples. It was problematic in Staples, absolutely. But what we have here is the jury being told that there are three elements to count one, and then in a subsequent instruction, they are told what the term manufacturer means and then how a machine gun is defined. There's nothing connecting the defendant's knowledge to first, manufacturer, and then second, the specific characteristics that made his device a machine gun. And this court has recognized, in Maines, actually decided the same year as Staples, that that, that Staples applies. So the question it comes down to, was the jury instruction sufficient to adequately convey to the jury that they had, that prong three for count one was basically a two-parter, that they first had to decide he knew he was manufacturing and that he knew the specific physical characteristics of his device that made it a machine gun. And in Maines, we said that instructing them that once, unknowingly, that we understood knowingly applied to both Section 5861 Act and the characteristics of the relevant firearm. So doesn't Maines cut against you, not for you? No. What I would say is Maines had a very specific jury instruction that we don't even have here. Like, there were multiple opportunities in Maines where the district court informed the jury of the knowledge requirement. And we don't have knowledge really coming up until we get to count two, which is the possession of a prohibited firearm. And there's no reason that the jury would mush these together, especially given how specific the instructions for count two are and how generic the instructions for count one are. And what this served to do is alleviate the government's burden of proof, which now translates into Mr. Bishop not being convicted on proof beyond a reasonable doubt. There's no reason the jury would mush them together, while our law is to the effect that we look at the jury instructions as a whole. The jury is presumed to read the jury instructions as a whole. And so if there's a definition of what machine gun is, and then you have to have knowledge that it is a machine gun, why isn't that enough? Because all the instructions for count one did was define machine gun. At no point was the jury told, you have to find not only that Mr. Bishop manufactured this thing, but that, in fact, he knew that his thing met the definition. He knew what little tweaks and things his device did that brought it within the scope of the NFA. And, in fact, given how count two is defined and the jury was instructed, it suggests to the jury, rather, that count one is a strict liability crime and requires less proof than mere possession. Again, and it goes back to the government. Well, is the possession or transferring of machine guns the other count? Is that appealed here? And is that a problem for you? The other count that was charged here? The instruction is not problematic, no, Your Honor. Well, the fact that there's no appeal from that conviction. I mean, you're accepting that conviction, and that conviction included possessing or transferring machine guns. It does. It also does not require the government prove that Mr. Bishop knew the specific characteristics that made his device a machine gun. Well, he admits by not appealing that conviction, he admits that he possessed or transferred a machine gun. By not appealing that conviction, he recognizes that the circuit has imposed word limits on briefing, and he chose to go with his strongest arguments. Okay. And, again, it does not require the same level of specificity that the Supreme Court has said convictions under 5861 require, which makes sense looking at the penalties that each particular conviction imposes, and that remains true throughout statutory interpretation. If there are no further questions on jury instructions, I'd like to reserve the remainder of my time. Okay. You've got only two seconds. Now one second. Give me a second. Good morning, Your Honor. May it please the Court. Ryan Tinney on behalf of the United States. In light of the discussion that just happened, I'd like to begin by answering some of the questions that were raised by opposing counsel. Specifically, I'll begin with the nature of the Court's ruling and what the Court did and did not prohibit. Page 569 of the record, this is what the District Court prohibited Mr. Bishop from saying. It said that he couldn't present, quote, specialized and technical information in your testimony. Now there's been this argument raised in the reply brief that Mr. Bishop was also prevented from talking about his intent and that he was prevented from talking about whether his device enabled multiple shots. We disagree with Mr. Bishop about both of those things. Throughout his testimony, his post-ruling testimony, he talks at length about his intent. I'll just give you a couple examples that I put in my notes. Page 581 of the transcript, he says, quote, I designed the kit. I intended the kit for a certain purpose. I did not design the kit as a machine gun part. I did not intend the kit as a machine gun part. Page 586, quote, my design for it was completely different than what the prosecution has alleged. It was intended as an educational experience. He goes on about this at length. In fact, if you look at his closing argument, and it was argument, not evidence, it's a nine-page closing argument by my count. He mentions the words intent or intend 18 times. So the District Court never prohibits him from talking about intent. He also claims in his reply brief that he was prohibited from talking about whether his device actually enabled multiple shots. He wasn't prohibited from that. Page 582 is from his post-ruling testimony. He's describing the YouTube video, and he says that in that video, his device didn't operate, quote, as a machine gun. It obviously has a higher rate of fire, but it does so in a different way than what the government has testified these kits do. Page 583, he testifies that his device still required, quote, a separate trigger pull, was required for each round expended, and so on. So the only thing the District Court prohibits him from doing is getting into the specialized technical aspects of how his device operates. And that's really the heart of both his constitutional claim and his evidence claim. As to the constitutional claim, that's already been resolved. It's been resolved by the Supreme Court in Taylor v. Illinois. It's been resolved by this Court in Adams. Both of those decisions hold that pretrial notice rules are constitutional. Taylor does so in a general witness sense. And Adams, this Court specifically, held that with respect to the expert notice rules. We've explained this in our brief that the Sandoval decision lays out  which is that when you get to specialized and technical testimony, if the other side doesn't have advance notice of it, one, it can't really respond without consulting with its own expert. I mean, by definition, because you're dealing with stuff that lay people don't know, you have to consult with an expert to understand it and respond to it. And two, if you don't, the jurors, who also are not experts, if they don't have an appropriate response from the other side, are going to sort of be left to take the word of it, of the person who testified, because they're going to think, I don't know any better than that guy. Opposing counsel just now talked about, well, the government should have been on notice. And I wanted to respond to that briefly. It's probably true on a practical level that the prosecutors may have thought, I wonder if he's going to try to say something about this. But Rule 16 is really specific. It doesn't obviate any pretrial notice if the other side could or perhaps should have anticipated you might try. It really specifically requires expert notice, but it's more than just notice that there will be some expert testimony. It specifically requires a written summary of the bases and reasons for the technical opinions. And that's so that you can consult with your own expert about the bases and reasons. And so here the prosecutors, they may have guessed that Mr. Bishop was going to try this, but unless he tells them what his exact theory is, unless he tells them about this forced reset trigger system theory he has, they don't have a basis to prepare for it. They don't know what he's going to say that's technical, and they couldn't prepare for it. And this gets to the problem that Taylor v. Illinois identifies, which is that if you don't give pretrial notice, you enable a litigant to present half-truths. This is the problem. If Bishop's allowed to testify without considered response from a government expert, what he was saying may have been true, but it may have not been true, and we wouldn't have been able to effectively counter it. Does it matter that he was pro se and if the government did suspect that he was going to try to do this, but that he didn't know he had to do a written summary under Rule 16? I mean, should anybody have helped him along? The court? I don't think it matters. Tweaked him? You know, if you're intending to talk about how your design works, you need to do this? I think there's a couple of reasons why it doesn't matter. First of all, Rule 16 doesn't have a carve-out for pro se litigants. So on the face of the rule, no. Second of all, in the context of this case, he's represented by counsel up until a month before trial. Even after the Feretta hearing and even after he waives counsel, he has them available as standby counsel. So he still has the assistance of counsel. In fact, there's a few places in the trial transcript where Judge Benson, the district court, sort of acknowledges on the record when the jury's out inside the room that it looks like he's going back and talking to counsel. But third of all, in the Feretta hearing, this is the whole point of the Feretta colloquy, Judge Benson goes on at length with him. You know, you're aware that this is... You have to follow the rules of evidence. You have to follow the norms. This is not an exception, and he said he was fine with that. And so for his own reasons, he made that choice, and he has to live with the consequences. But even moving beyond that, Taylor says that the government has a protectable interest itself in notice, so he's pro se, but we still have the right to prosecute our case in a fair proceeding. I'd be happy to answer any other questions on the expert issue if you have them. Was the jury instruction error? No, no, it was not error. The jury instruction tells the jury that they have to find beyond a reasonable doubt that he, quote, knew he was manufacturing machine guns. He doesn't object to that, so we have an obviousness problem. He's got to point to some authority that says that the instruction has to be structured differently. He relies on Staples, and he says in his reply brief that Staples requires this. Staples doesn't require the formatting that he's talking about. Staples requires the mens rea, and we completely agree with him that the government was required to prove this, but Staples doesn't say anything at all about how it is that you must structure those instructions. A mens rea of what? Knowing, but I mean, that's really the point here, isn't it? Right, he has to know the offending characteristics because the argument, the issue in Staples was whether there was even a mens rea that applied to the characteristics component, and the government was arguing there that there wasn't, and the Supreme Court disagreed, and so the thing that gets settled by Staples is that there is this mens rea, that you have to know the characteristics of the gun and bring it under the purview of the NFA. Knowing that he was manufacturing and knowing what he was manufacturing. Knowing that the thing that he was manufacturing has these specific characteristics. Yes, and that was something the jury had to find that he had done. Yes, that's the mens rea from Staples, and we're not contesting that here, but the issue that he's raising... But does your instruction tell the jury that, that that is the burden of the government? It does, because the instruction tells them that they have to find that he, quote, knew he was manufacturing machine guns. And the very next instruction defined... I think the argument that's being made is knowing may not extend to the characteristics of a machine gun. Right. That he had to know it was a machine gun and what a machine gun was. Right, and this Court has been acknowledged, confronted a somewhat similarly worded instruction in Mains and found no problem. I'm not aware of any case from this Court or the Supreme Court that has held that in order to properly convey the Staples mens rea to a jury, you have to separately put the mens rea in front of both elements. That's his claim, that unless you put the mens rea in front of both elements, it's an error. So at a minimum, I take it your position would be that it's not a clear or obvious error even if it were an error. Yes, that's our first argument, that if he's going to show... I mean, he's really making a structuring or a formatting argument. That's his argument. His argument is it's unclear to a jury unless you put the word knowing in front of both elements that they have to find this. And I can't find a case from this Court or the Supreme Court that says that. So then you're left with your ordinary jury instruction case law which says you interpret jury instructions on sort of a common sense ordinary reading. And this gets into our discussion of the various hypotheticals we've posed, the gerund phrase and so forth. I can't think of how else a jury would read this. I've struggled. I've tried to figure out how else you'd read it. I just don't see that a juror would read the phrase knew he was manufacturing machine guns and have any doubt that he had to know both that he was manufacturing and that the thing he was manufacturing was a machine gun. And so that's the reason there's no error because this instruction conveys the requirement. Moving off of that, even if there was somehow some error and it was obvious, it wasn't prejudicial, the government never argues to the jury that it's sufficient to convict him if they just think he was manufacturing something. The whole tone of the argument in the presentation of evidence was about his specific knowledge. There was overwhelming evidence that he knew exactly what it was that he was manufacturing. This is not a device that had some utility for some ordinary purpose. It's a device that was very specifically shaped and contoured. The customers talk about it does this very specific thing. And so even if you get through plain error prongs one and two, we just don't think you get to prong three. If there are any further questions on the instruction issue, I'd be happy to address them. This isn't on the instruction. One of the arguments that Mr. Bishop makes is that the court was very strict with me on technical or specialized knowledge, but yet it let the government put on an agent who was not designated as an expert who testified at length about specialized knowledge, and it put on a bunch of his former customers who used similar terms that were specialized and showed specialized knowledge that the court had refused to allow Mr. Bishop to do. So it's kind of a this ain't fair argument. Let me respond on a couple of levels to that claim. First of all, I think he's wrong in his account of the record. He says in his reply brief, and I don't have the passage right in front of me, but in his reply brief he makes the claim very specifically that the government testimony that you're referring to was of the same length and the same kind as what he was proposing. I think that's just wrong. But it was technical. Yeah, it is technical. No, I mean, it's a little bit difficult to talk about in general. He didn't show a video, I don't think. Right. If you track the references that he cites in his reply brief and if you go to those portions of the testimony, the overwhelming majority of them that he's pointing to are stray references from witnesses, his customers, who are describing what happened when the device gets in, and they're just dropping jargon. But they're not getting into very detailed or lengthy explanations of technical aspects of how an AR-15 works and so forth. What he was trying to do was demonstrably different. It was orders of magnitude different. These witnesses that he's citing to were just saying, look, I affixed it to the bolt carrier adapter, or I put it here, and they're using sort of terms. The Olson passage, Judge McHugh, I think is a little bit different. That's the one where he goes on a little bit longer. I mean, it's a couple of sentences if you look to it. But the government there is not relying on Olson's technical testimony to support his technical theory of the case. They're relying on Powell. Right. But, I mean, that's not his point. His point is that, you know. The fairness. Yeah, I mean, you're letting other people come in and talk about how I was able to put it in unloaded, of course, put the gun into semi-automatic mode and pull the bolt carrier at the changing handle back, which would cycle the bolt carrier group to the cycled back, and as it proceeded forward and you could see the hammer continue. I mean, that's pretty technical. Right. And let me respond on a couple of different levels there. First of all, the fundamental difference between what Olson was doing and what he was proposing to do is that we objected and he didn't. That probably is the big difference. And I think that's the difference that matters. I mean, if I'm right in the opinion, that's it. Because in an adversarial system, it's up to the parties to decide when they're going to object and when they're not. It's up to the parties to protect their own interests. If he thought that there was any problem with Olson testimony, if he thought that Olson had veered into expert testimony territory, he could have objected. And maybe the government would have said, you know what, you're right. Please strike it. Maybe the court would have said that. But he doesn't get to sit on his own objection and then turn around in his own case and say, well, you know, I didn't object to yours, so therefore you can't object to mine. And that's really what he's arguing. If he wants to protect his own interests, he can. He can object. But that doesn't stop us from protecting our own interests with an objection, which we did timely make. And I think that's really the response here. The other thing that I would say, and that is the first response, but I do think that if you look at them, they're qualitatively different. Even what Olson is saying is a relatively small passage of Olson's testimony, but what defendant was trying to do was structure an entire defense around technical testimony. We weren't structuring our entire technical theory of the case around Olson. We were structuring it around Powell. And Powell was cross-examined. Defendant wanted to come in with an entire defense structured around a very detailed explanation. I just think they're fundamentally different in that sense. I have 15 seconds left. If there are any issues you'd like me to address or any questions you'd like to ask, I'm happy to respond. Thank you. Thank you. You have your one second. You're good, aren't you? You're good? I think you're forgiven that I have one second. I submit the case respectfully ask that the case be reversed and reviewed. Thank you. Thank you. Thank you, counsel. Thank you both for your arguments this morning.